MOORE et al. v. REID.   (No. 85.)

(Court of Civil Appeals of Texas.   Beaumont. April 26, 1916.)

1. APPEAL AND ERROR ☞172(3)—REVIEW—IS-
SUES WAIVED WHEN NOT SUBMITTED TO
JURY.

In an action for trespass to try title and for damages for cutting timber. where no questions of the amount or value of timber cut are submitted to the jury, these issues on appeal will be treated as having been waived.

[Ed. Note.—For other cases. see Appeal and Error, Cent. Dig. §§ 1074, 1075 ; Dec. Dig. ☞ 172(3).]

2. APPEAL AND ERROR ☞1078(1)—JOINT AS-
SIGNMENTS OF ERROR.

Where appellants joined in the appeal and brief, and the only assignment of error urged affects but one of the appellants, the court will not consider any error committed against the others.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4258; Dec. Dig. ☞1078(1).]

3. FRAUDS, STATUTE OF ☞68—PAROL PARTI-
TION.

A parol partition is not a conveyance of land, in a sense that it must be evidenced by an instrument in writing, under the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 109, 110 ; Dec. Dig. ☞68.]

4. TRESPASS TO TRY TITLE ☞6(1) — PARTIES
IN INTEREST.

Where plaintiff by parol partition accepted a tract of land in full settlement of his interest in his father's estate, he had no further interest in such estate. and could not recover in trespass to try title involving other lands of the estate.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 5–7, 9, 15, 16; Dec. Dig. ☞6(1).]

Appeal from District Court, Tyler County ; A. E. Davis, Judge.

Trespass to try title by M. R. Moore and others against S. H. Reid. Judgment for defendant, and plaintiffs appeal. Affirmed.

J. A. Mooney, of Woodville, for appellants. Thomas & Wheat, of Woodville, for appellee.

CONLEY, C. J.   [1] This was a suit in trespass to try title, brought by the appellants, Mrs. M. R. Moore, joined by her husband, M. R. Moore, Ada Smith, R. L. Watts and Clara Watts, his wife, T. A. Falvey, J. C. Falvey, and R. C. Watts, against S. H.

Reid, for a 160-acre tract of land, one of the Jeremiah Falvey surveys in Tyler county, Tex., and for damages for alleged timber cut. The appellee answered by general demurrer, general denial, and plea of not guilty. The case was tried before a jury and submitted by the court on special issues. No issue on the question of the amount and value of the timber cut and removed from the survey was submitted to the jury, nor requested by any of the appellants, and therefore that feature of the litigation will be treated as waived. The court rendered judgment for appellee upon the answers given by the jury to the several questions propounded to them. To this action of the court the appellants excepted, and have perfected an appeal to this court.

There is only one assignment of error in the record, and that is:

"No title was proved out of J. C. Falvey to the land in controversy, and the court erred in rendering judgment for defendant for land which J. C. Falvey had inherited from his father, and had not conveyed to any one, and no title was shown in the defendants."

[2] Although the other persons herein named have joined in this appeal, still no objection of any kind by them is urged to the judgment of the court below, but the entire brief is devoted to urging the alleged error as it affects J. C. Falvey only. Under such circumstances, this court will not consider any error, if any has been committed, against the other appellants, and as to such persons the judgment is in all things affirmed.

Coming now to consider the assignment of error of J. C. Falvey, as hereinabove set out, it would appear from the record that Jeremiah Falvey was granted three land certificates in the year 1856 for having built the steamship Mary Falvey. These certificates were granted under the act approved February 3, 1854 (Acts 5th Leg. c. 31), "to encourage the building of steamboats, steamships and other vessels in the state of Texas." The certificates call for 320 acres of land each, making a total of 960 acres. Jeremiah Falvey died some time between the years 1858 and 1860, leaving surviving him his widow, Mary Falvey, who subsequently married William Watts, and three children, to wit, T. A. Falvey, J. C. Falvey and Harriet Falvey, who married M. R. Moore. The appellants in this case are the children of Mary Falvey from her marriage with Jeremiah Falvey and her second marriage with William Watts.

It further appears from the record: That on October 28, 1859, a survey of 320 acres of land was made in Tyler county, two miles east of Woodville, by E. S. Pitts, county surveyor, for Jeremiah Falvey, by virtue of land scrip No. 15/23, and the field notes, together with the certificates, were filed in the land office November 11, 1859, by E. S. Pitts. This survey was patented to Jeremiah Falvey

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

February 5, 1866, and patent forwarded to S. A. Wilson March 3, 1866. On January 16, 1862, a survey of 320 acres was made in Tyler county 2½ miles north 72° east from Woodville by M. C. McAllison; county surveyor of said county, for Jeremiah Falvey, by virtue of land scrip 16/24. (The description of said certificate in the field notes of said survey is 14/22, a mistake.) The field notes of said survey, together with said certificate 16/24 were filed in the general land office by E. S. Pitts on February 5, 1862. This survey was patented to Jeremiah Falvey November 13, 1862, and patent forwarded to E. S. Pitts January 12, 1865. On June 1, 1864, a survey of 160 acres in Tyler county, 2 miles east of Woodville, was made for Jeremiah Falvey by John McBride, county surveyor of said county, by virtue of certificate No. 14/22, issued January 16, 1856. That on June 2, 1874, a survey of 160 acres was made in Tyler county, 1¾ miles 50' west from Woodville by John McBride, county surveyor, for Jeremiah Falvey, by virtue of said certificate No. 14/22 issued January 16, 1856, for 320 acres. The field notes of these two surveys, together with said certificate, were filed in the general land office by W. B. Cline August 5, 1874. The survey dated January 2, 1874, was patented to Jeremiah Falvey September 12, 1913, and was delivered to S. H. Reid, the appellant in this cause, September 18, 1913. This is the tract of land now in dispute. The other survey is not patented.

In 1873 T. A. Falvey conveyed, by deed, all of his one-ninth undivided interest in and to the three certificates, and in and to the land located thereunder, to J. E. B. Laird. Mary Watts (née Mary C. Falvey, his widow), by deed dated August 20, 1873, conveyed all her interest in the certificates, and in the land located thereunder, to Mrs. L. L. McBride. Harriet Moore (née Falvey), by deed dated February 16, 1882, conveyed all of her interest in the certificates, and in the land located thereunder, to John McBride.

In the instant case the jury found, and the court entered judgment accordingly, that Jeremiah Falvey agreed with W. B. Cline and Neyland & Pitts to give them a one-third interest in the certificates for locating them. No attack is made by appellants upon this feature of the case. On the 1st day of October, 1872, J. C. Falvey executed to W. B. Cline the following deed:

"The State of Texas, County of Tyler.

"Know all men by these presents, that I, James C. Falvey, of the county of Jasper, have this day bargained, sold and conveyed, and by these presents, for and in consideration of $30 cash to me in hand paid by W. B. Cline, of the county of Tyler, sell, alien and convey unto the said W. B. Cline, his heirs and assigns, one undivided one-third interest in and to 320 acres of a 320-acre survey patented to —— Falvey, situated in Tyler county about two miles *east* of Woodville. To have and to hold all and singular the said undivided interest, free from all incumbrances. And I bind myself to forever warrant and defend the title to said land against all other persons whomsoever claiming or to claim the same, unto him, the said W. B. Cline, his heirs and assigns.

"In witness whereof, I have hereunto set my hand and scroll for seal this 1st day of October, 1872. J. C. Falvey."

This deed is duly acknowledged. It is further shown by the record that all of the interests under these various conveyances are now vested in the appellee, S. H. Reid. The three certificates, and the land located thereunder at the time of the death of Jeremiah Falvey, were community property of Jeremiah Falvey and his wife, Mary C. Falvey.

Under the verdict of the jury and the judgment of the court in the instant case it was determined Jeremiah Falvey, during his lifetime, contracted with W. B. Cline and Neyland & Pitts to locate the certificates for a one-third interest therein. The remaining two-thirds interest in the certificates, and the land located thereunder, at the death of Jeremiah Falvey, descended to his wife and three children in the following portions, to wit: One-third to the wife, and one-ninth to each of the three children.

It is contended by appellee that the evidence shows that there was a parol partition between the Falvey heirs, in which it was agreed that the appellant in this case, J. C. Falvey, should be and was given, as his share in the estate of his father, the undivided one-third interest in the 320-acre survey located two miles east of Woodville, and which he, J. C. Falvey, subsequently conveyed, at the date aforesaid, to Cline, and that therefore the said J. C. Falvey had no other or further interest, by reason of the parol partition, in any other portion of his father's estate. J. C. Falvey's interest in his father's estate amounted to one-ninth of 960 acres, or 106⅔ acres. A one-third interest in the 320-acre survey, which appellee contends he accepted as his share of his father's estate, amounted to 106⅔ acres. In a former opinion rendered in this cause, we reversed and rendered this cause, and in doing so we find ourselves in error. The testimony of J. C. Falvey was misunderstood by us. The transcript of the evidence is so loosely and carelessly written that we were confused in our conception of what the witness J. C. Falvey actually said about how he acquired his one-third interest in and to the 320-acre survey. The question and answer of the witness, affecting this interest, and as written in the transcript, was not distinguished by quotation marks, or a question mark; but the question and answer were so run together that we misunderstood its true construction or meaning.

[3, 4] The trial court found, in effect, that there was a parol partition between the Falvey heirs, in which J. C. Falvey acquired

the one-third interest in the 320-acre survey. There is evidence in the record to support this conclusion. A parol partition is not a conveyance of land, in the sense that it must be evidenced by an instrument in writing, under the statute of frauds. After J. C. Falvey accepted this interest, under said parol agreement to partition the estate of his father, he then had no further interest in his father's estate, and could not recover in this suit.

The former opinion in this case is withdrawn, and this one substituted. The motion for rehearing is granted, and the judgment of the lower court is affirmed.